## Michael Harrold, Appellant, v. City of East St. Louis, Appellee.

1. MUNICIPAL CORPORATIONS, § 1139*—*when city liable for unauthorized acts of officers in misapplying proceeds of tax levy to pay tax warrants.* An action in assumpsit will lie in favor of a bona fide holder for value of tax warrants duly issued by the proper authorities of a city in anticipation of a tax properly authorized and levied, where the proceeds of the levy have been diverted by the constituted city authorities to the payment of other debts of the city, and the holder of such warrants will not be confined to his remedy against the city officers, so unauthorizedly diverting such funds, and their bondsmen.

2. MUNICIPAL CORPORATIONS, § 1139*—*when proceeds of tax levy to pay tax warrants trust fund to pay holders of warrants.* Where anticipation tax warrants have been issued, the proceeds from such tax levy when collected constitute a trust fund in the hands of the city, levying the tax, in favor of the holders of the warrants.

3. ASSUMPSIT, § 13*—*when lies against municipal corporation.* An action in assumpsit will lie against a municipal corporation to recover money owing in equity and good conscience.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROWE, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed December 1, 1915.

DAN McGLYNN and B. H. CANBY, for appellant.

S. W. BAXTER and T. L. FEKETE, for appellee; JOHN E. HAMLIN, of counsel.

MR. JUSTICE BOGGS delivered the opinion of the court.

This is an action in assumpsit brought by appellant, plaintiff below, against the appellee, defendant below, in the Circuit Court of St. Clair county. The declaration is on the common counts, to which appellee pleaded the general issue. The damages claimed are $25,000. A jury was waived and the cause tried by the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The trial court found the issues for appellee and rendered judgment in bar of action and for costs, from which judgment the present appeal is prosecuted.

The facts in the case are substantially undisputed. The evidence shows that in January, 1912, the city council of the City of East St. Louis passed its appropriation ordinance for the fiscal year 1912, appropriating the sum of $576,000 for the various city expenses. In June of the same year, the annual tax levy ordinance was passed to meet such appropriation. The city having exhausted the funds in its treasury, on August 19, 1912, passed an ordinance authorizing the mayor and city comptroller to issue anticipation warrants against the taxes levied for the year 1912 to the amount of $194,431.02, being seventy-five per cent. of said tax levy. The evidence further shows, and it is in fact conceded, that the warrants in evidence in this case were a part of the issue that was authorized and that said issue was within the seventy-five per cent. limit provided by law.

The evidence further shows that in December, 1912, the mayor and city comptroller issued other anticipation warrants amounting to over $26,000, which with the amount theretofore authorized and issued made a total of $221,699.86, being in excess of seventy-five per cent.

The evidence further shows that when the certificates of the mayor and city comptroller showing that the original issue of warrants was within the seventy-five per cent. limit provided by law were delivered to the Southern Illinois Trust Company, the warrants were issued by the city and delivered to the persons in whose favor they were drawn, and were presented for payment to the Southern Illinois Trust Company, and that company, in behalf of the Continental and Commercial National Bank of Chicago, paid the amount of the warrants to the holders.

The evidence further shows that appellant purchased

these warrants from the Continental and Commercial National Bank, and paid their full face value, with accrued interest. In fact, it is admitted by appellee that appellant obtained such warrants for value and in good faith, and also that sufficient funds were received from the taxes of 1912 by the city treasurer to have redeemed said warrants in full.

The evidence further shows that one Fred Gerold was the city treasurer of the City of East St. Louis during the year 1912, and up to May 5, 1913; that as such city treasurer he was *ex officio* town collector of taxes for the Town of East St. Louis, and his delinquent return to the county treasurer shows that the net amount of city taxes of the City of East St. Louis collected by him for the year 1912, was $154,231.98. And in his monthly report to the city council for the month of April, 1913, he charged himself, as city treasurer, with having received this amount from the city tax revenue for the year 1912.

The evidence further shows that out of the taxes received by Fred Gerold, city treasurer of said city, for the year 1912, he redeemed anticipation warrants drawn against these taxes to the amount of $112,530.84; that included in the anticipation warrants so redeemed by him were about $26,000 of warrants issued in December, 1912, to make what was called the "Christmas pay," that is, to pay the policemen, firemen and other city employees for back salary owing them. There were also included $6,765.19 of anticipation warrants drawn by the mayor and city comptroller against this tax levy during the months of January, February, March and April, 1913. The limit that lawfully could be drawn was $194,431.02, consequently the treasurer, in paying the $26,000 and the $6,675.19 of warrants issued as above set forth, paid out in excess of the seventy-five per cent. limit the sum of $27,268.84. The difference between the amount of taxes received by the city treasurer, viz.: $154,231.98, and the amount of

anticipation warrants redeemed by him, $112,530.84, is the sum of $41,701.14, and this amount, the evidence shows, he paid out in taking up warrants drawn and issued by the mayor and city comptroller for current expenses authorized by the city council, instead of using said funds to take up said anticipation warrants.

The evidence further shows that a demand was made upon Fred Gerold, city treasurer, to pay the anticipation warrants held by appellant after said treasurer had received the taxes for the year 1912, against which, said warrants were drawn, and that said treasurer stated he had no funds to pay them. Thereafter a demand in writing, with a list of the warrants attached, was served on Frank Keating, the successor of Gerold as such city treasurer, and he too failed to pay them on the ground that he had no funds. The controlling question, therefore, in this case is, can appellant recover from appellee, the City of East St. Louis, the amount unpaid on said anticipation warrants held by him, or is his only remedy against Fred Gerold, former city treasurer of said city and his bondsmen.

Appellant contends, first, that the statute (chapter 146a, sec. 2, Rev. St. 1911, J. & A. ¶ 11525), by authority of which the anticipation tax warrants in evidence were issued, imposes the duty upon the "proper authorities" of the municipal corporation issuing and disposing of such warrants, to set apart and hold the taxes against which they are drawn for their payment, and for any negligent or wrongful failure to perform this duty, after the taxes have been collected and are in the municipal treasury, the city will become liable generally to the holders of the warrants to the extent of the taxes so received, as for money had and received to the use of the warrant holders.

The second contention is that irrespective of the requirements of the statute, if a city, having made provision for issuing warrants in anticipation of a tax already levied, in payment of the ordinary and neces-

sary expenses thereof, issues and disposes of such warrants, and after the taxes out of which such warrants are payable have been collected and are in the city treasury, the city, either by the direct act of its council, or by and through the wrongful acts of its duly authorized officials in charge of the administration of its fiscal affairs, causes said taxes to be diverted from the payment of said warrants, and to be applied to other corporate purposes, the city will thereby make itself liable generally to the holders of the warrants to the amount of such taxes so diverted.

On the other hand, appellee claims that there is no liability on its part to appellant in this case for the reason that these anticipation warrants held by appellant provide on their face that they are to be paid out of the taxes of 1912 and not otherwise, and that appellant's sole remedy to recover the amount owing to him on said warrants is by suing the former treasurer of said city and his bondsmen.

The Supreme Court of this State in the cases of *City of Springfield v. Edwards,* 84 Ill. 626; *Law v. People,* 87 Ill. 385; and *Fuller v. Heath,* 89 Ill. 295, define the law governing municipal corporations which are already indebted up to the constitutional limit in reference to issuing anticipation warrants against a tax already levied. These limitations were, first, that the tax appropriated must at the time be actually levied; second, the legal effect of the contract between the corporation and the individual made at the time of issuing and accepting the warrants on the treasury must operate to prevent any liability to accrue on the contract against the corporation, the duty remaining for the proper officers to collect and pay over the tax; that for any failure in that regard, the remedy must be against the officers, and not against the corporation. Otherwise a contingent debt would in this way be incurred by the corporation. The effect of these decisions was to relieve municipal corporations indebted

up to the constitutional limit, in issuing anticipation warrants against a tax already levied, from all duty or responsibility for the application of the taxes when collected to the payment of the warrants drawn against it, and to cast that duty upon the officers, who are by law required to collect and pay over the taxes.

At the time these cases were decided, there was no statute in this State regulating and controlling the manner in which municipal corporations might issue anticipation warrants against a tax already levied. After these decisions were rendered, such a statute was enacted. The Legislature by an Act approved May 31, 1879, in force July 1, 1879, and which with amendments made in 1901, is now chapter 146a, Rev. St. 1911 (J. & A. ¶¶ 11524-11527), provided by section 2 of said Act (J. & A. ¶ 11525) the manner in which municipal corporations might thereafter issue anticipation warrants against a tax already levied. This section makes it lawful for "the proper authorities" of the municipal corporations therein mentioned, whenever there is not sufficient money in the treasury to meet and defray the ordinary and necessary expenses thereof, to provide a fund to meet said expenses by issuing and disposing of warrants drawn against and in anticipation of any taxes already levied by "said authorities" for the payment of the ordinary and necessary expenses thereof, to the extent of seventy-five per centum of the total amount of any such tax levy. The proviso to the section requires that the warrants shall show upon their face that they are payable solely from said taxes when collected and not otherwise, and shall be received by any collector of taxes in payment of the taxes against which they are issued. The last clause thereof provides: "And which taxes against which said warrants are drawn shall be set apart and held for their payment."

The language of the last clause of this section is general. It names no one to perform the duties which it

imposes, and its application is to be determined from a consideration of the entire section when read together as a whole. When so read, it is at once perceived that no one is mentioned anywhere in the section to whom the duty of setting apart and holding the taxes for the payment of the warrants can be referred, except "the proper authorities," who have already levied the tax, and who have drawn and issued the warrants against the same. This section confers a power, to be exercised in a certain way, and subject to certain prescribed limitations, burdened with the performance of a certain duty, annexed to the exercise of the power; the duty being imposed upon those upon whom the power is conferred.

This section of the statute has never been construed by the Supreme Court with reference to the question as to whether the last clause creates a corporate duty, for the negligent or wrongful failure to perform which, the municipality may become liable to the warrant holder generally, in the same way that it may become liable for its negligent or wrongful failure to perform any other duty devolved upon it by law. It would seem, however, that the holding of the Supreme Court made before the enactment of this statute, as applied to municipal corporations indebted beyond the constitutional limit, to the effect that the only remedy of the warrant holder is against the collecting officers for a failure to pay the warrants when the taxes have been collected, has been abrogated by this statute; that while the warrants create no debt against the municipality, being payable solely from the taxes, when collected and not otherwise, yet the statute imposes the duty upon the municipal authorities issuing the warrants, to set apart and hold the taxes, against which the warrants are drawn, when collected, for their payment, and that for the negligent or wrongful failure to perform that duty, the municipal corporation may render itself liable, in the same way, and to the same extent

that it may become liable for the nonperformance of any other duty imposed upon it by law. The fact that some municipal corporations in the State may be indebted up to the constitutional limit, in no way affects the competency of the Legislature to impose this duty upon all municipal corporations in the State issuing anticipation warrants under this statute. It is not in violation of section 12, article 9, of the Constitution which prohibits municipal corporations from becoming indebted beyond five per cent. of the value of their taxable property. The act does not create a debt or claim against any municipal corporation. If no person suffers damage from a failure to perform the duty, no debt or charge will ever be created. The fact that a cause of action may arise from the neglect of this duty is no more a debt against the city or municipality than is the right of recovery against such municipality for any other wrong or injury. *City of Chicago v. Manhattan Cement Co.,* 178 Ill. 372.

If our construction of the statute in this respect is correct, then the duty of the municipalities issuing anticipation warrants to set apart and hold the taxes against which they are drawn for their payment, is precisely analogous to the duty of cities and villages making local improvements under the Local Improvement Act of this State, to set apart and hold the special taxes or assessments against which vouchers and bonds have been issued for their payment.

Sections 73 and 90 of the Local Improvement Act (chapter 24, Rev. St. 1911, J. & A. ¶¶ 1464, 1465) provide that no person or persons taking any contract from any city, village or town and agreeing to be paid out of special assessments or special taxes, shall have any claim or lien upon the city, village or town in any event, except from the collection of the special assessments or special taxes made for the work contracted for, and no person or persons accepting the vouchers or bonds provided for in the act shall have any claim

or lien upon the city, town or village in any event, for the payment of such vouchers or bonds, except from the collection of the assessment against which such vouchers or bonds are issued. Section 12, art. III, ch. 24, Rev. St. 1911, provides that all money received on any special assessment shall be held by the treasurer as a special fund to be applied to the payment of the improvement for which the assessment was made, and said money shall be used for no other purpose whatever, unless to reimburse such corporation for money expended for such improvement.

The Supreme Court in passing on these sections of the Local Improvement Statute has held that a city is powerless to make itself liable by ordinance for special assessment bonds, vouchers or interest. *Village of Park Ridge v. Robinson,* 198 Ill. 571.

However, the court in said case states an exception to the doctrine of nonliability in the following language: "As a general rule, it will be found that in the cases in which the municipal corporation has been held to a general liability, there has been some wrongful act, negligence or default on its part which injuriously affected the rights of the claimant."

In the case at bar, one of the grounds of recovery claimed by appellant is that the taxes against which the anticipation warrants were issued were collected and received by the city treasurer, and that under the statute it was the duty of the city to set apart and hold these taxes for the payment of the warrants. The city neglected and failed to do this, but on the contrary, has drawn warrants on its treasurer, and has allowed him to pay out the funds in his hands which should have been used for the payment of these anticipation warrants, whereby appellant's right to have his warrants paid out of said tax was wholly lost.

In the case of *Conway v. City of Chicago,* 237 Ill., pages 135 and 136, the Supreme Court in passing on the provisions of the above mentioned sections 73 and

90 of the Local Improvement Act, and section 13, art. III, ch. 24, Rev. St. 1911 (J. & A. ¶ 1313), says: "The improvement having been projected by the city as an improvement to be paid for by special assessment, the city is not liable, generally, for any unpaid balance due the contractor. The liability of the city, both under the law and under the contract with appellee, is limited to the amount of the special assessments actually collected for this improvement and which have not been paid over to appellee.   *   *   * Where the special assessment has been levied and collected by the city and nothing remains to be done except to pay it to the party entitled to it, assumpsit is a proper remedy to compel the city to pay it over." The court further says: "The funds collected from this special assessment constituted a trust fund to pay for the improvement, and the city had no right to transfer them to other funds and draw on them indiscriminately for pay rolls of inspectors, engineers, accountants and other officers and employees of the special assessment department, without regard to the improvement with respect to which such services were rendered or expenses incurred.   *   *   * Appellant having thus wrongfully diverted these amounts is liable therefor in this action."

The court further says: "While appellee's ownership of past-due bonds issued in anticipation of this special assessment is a necessary element in his right to recover in this case, still this is not a suit upon the bonds in the sense that the recovery must be according to the tenor and effect of the instruments, but it is essentially a suit against the city for money had and received to the use of appellee which in good conscience ought to be paid to him."

It would seem that the duty of the city to pay vouchers or bonds issued under the Local Improvement Act out of special assessments against which they are drawn, when the special assessment has been

collected, is no greater than the duty of a city, having issued anticipation warrants against a tax levy to set apart and hold the taxes against which they are drawn for their payment. It is a statutory duty in each case. As the Supreme Court holds the city liable in the one case we see no reason why it should not in the other.

Appellee relies on the case of *Schulenburg & Boeckler Lumber Co. v. City of East St. Louis,* 63 Ill. App. 214, that being a case where plaintiff, said Lumber Company, brought suit against the City of East St. Louis upon the theory that it was also the holder of anticipation warrants; that the taxes out of which such warrants should have been redeemed had actually been collected, but that the funds derived thereby had been wrongfully and tortiously diverted to pay other expenses of the city, in which case the city was held not liable. We believe, however, since the amendment of 1901 to the statute in reference to issuing anticipation warrants, and in view of the holding of the Supreme Court in *Conway v. City of Chicago, supra,* that, the *Schulenburg & Boeckler* case, *supra,* would not be an authority in this case and should not be followed, the statute having been materially amended since such decision was rendered.

We further believe that appellant has the right to recover from appellee in this case on the ground that in equity and good conscience, having received from its city treasurer the funds derived from the taxes out of which these warrants held by appellant were to have been paid, and having expended these funds in the payment of its ordinary current expenses and the city having had the benefit of said funds, it would be liable to the appellant therefor in an action of assumpsit for money had and received.

It is conceded in this case, both by appellant and appellee, that the anticipation warrants issued in this case do not create any indebtedness against the city; that it amounts in effect to an assignment to the appel-

lant of so much of the taxes then levied as is necessary
to pay said warrants. That being true, the city had
no right whatever, after said warrants had been issued
and the city had received the money on the same as
provided by statute, to receive or expend said taxes,
and having done so it would be liable therefor.

We further hold that having caused the issue of said
anticipation warrants and having received the funds
therefor, it was the duty of the city to in no way hin-
der or delay the holder of said warrants from receiv-
ing payment therefor out of the taxes to be collected;
that rightly, it was the duty of the city authorities to
see to it that the funds necessary to take up these an-
ticipation warrants be set aside when collected and
held as a trust fund for said purpose. The city au-
thorities have failed and neglected so to do, but instead
thereof have issued warrants directed to its treasurer,
and with knowledge thereof have allowed said treas-
urer, out of the funds which he had collected, and
which should have been held as a trust fund to take up
said anticipation warrants, to expend said funds in
the payment of said warrants so drawn for the ordi-
nary running expenses of said city.

There is quite a line of decisions in this State to the
effect that an action in assumpsit will lie to recover
money owing in equity and good conscience from one
person to another, even though that person should be
a municipal corporation, such as the defendant in this
case, some of which we will refer to.

In the case of *Trustees, etc. v. Trustees, etc.*, 81 Ill.
470, being a case where trustees of schools, as such,
are sued for funds which came into the hands of their
treasurer and were appropriated by them as such
trustees, were sought to be held as trustees of schools
in action to recover said funds, the court at page 473
says: "But it is said that this money was paid to the
treasurer as an individual, and the trustees controlled
it as individuals, and the recovery should be had

against them as individuals. The money was ordered to be paid to the treasurer, and not the individual holding the office; and he received it as treasurer, loaned it as treasurer, and the trustees ordered him to pay it out as treasurer. Nor did the trustees assume the control of the fund as individuals. All they did, so far as we can see, was as trustees and not as individuals.

"But it is said that the treasurer had no power, as an officer, to receive the money, nor did the trustees have a right to control it as officers. To admit this position would be to hold that the corporation could be held liable for no wrongful act of its officers. If, through mistake, they should collect money not owing to the fund, and it were placed in the treasury, the corporation could hold it, and the person wronged would be compelled to look to the individual officers for his money. It would be to hold that whatever funds found their way into the school treasury, they might hold it, however unjust or dishonest. Such cannot be the law, as it shocks every principle of right. Such corporations, like individuals, must, when they obtain and hold the money of another, be held to refund it. There are many acts of such officers for which such corporations are not liable, but this is not of that class."

In the case of *City of Elgin v. Joslyn,* 136 Ill. 525, being an action in assumpsit brought by John Joslyn against the City of Elgin to recover for work and materials furnished by appellee in the construction of the Elgin water works. The declaration contained the common counts only. There was a written contract between the parties, but the claim as made is for extras and extra work and materials. At page 530 the court says: "The undisputed evidence on both sides shows, that, at a certain point, the city took charge of the work and finished it." At page 532 the court says: "When plaintiff quit the work begun by him, he left in the hands of the city certain materials, tools and ma-

chinery. The materials were used, and the tools and machinery were destroyed by the city in the completion of the work. It is objected, that the plaintiff was allowed to introduce evidence of these facts upon the trial, and to recover for the value of the property thus used up and destroyed.

"It is claimed, that the act of the city in using and appropriating this property of the plaintiff was a tort, and that the city is not liable in this action of assumpsit. Appellant's position is, that assumpsit will not lie when property is wrongfully taken, unless it is converted into money, or money's worth, or there has been a subsequent promise to pay for the same. We do not think that such is the law as applied to the facts of this case. The act of the city may have been tortious, but the plaintiff had the right to waive the tort and sue in assumpsit, as the city applied the property to its own use and benefit. Where one wrongfully takes the goods of another and applies them to his own use, the owner may waive the tort, and charge the wrongdoer in assumpsit on the common counts, as for goods sold, or money received. (*Toledo, W. & W. Ry. Co. v. Chew,* 67 Ill. 378.)"

In the case of *Highway Com'rs v. City of Blooming-ton,* 253 Ill. 164, an action of assumpsit based upon the common counts, was brought by the Highway Commissioners of the Town of Bloomington against the City of Bloomington to recover from said city the amount of taxes collected on property in Bloomington township, located within the corporate limits of the City of Bloomington and paid over by the collector of revenue to the city under the third provision of section 16 of the Road and Bridge Law as amended in 1909 (J. & A. ¶ 9643). This law had been previously declared unconstitutional, and this suit was brought to recover said taxes for that reason. In this case the court discusses at great length the right to bring actions of assumpsit in this character of cases and cites numerous

authorities, both in this State and in other States and from the United States Supreme Court reports.

At page 174 the court says: "The action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. (*Gaines v. Miller,* 111 U. S. 395; *Pauly v. Pauly,* 107 Cal. 8; *Brown v. Woodward,* 75 Conn. 254; *Wilson v. Turner,* 164 Ill. 398.) The action is in form *ex contractu,* but the alleged contract being purely fictitious, the right to recover does not depend upon any principles of privity of contract between the plaintiff and the defendant and no privity is necessary.   *   *   *   The right to recover is governed by principles of equity although the action is at law.   The action is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex aequo et bono* belongs to another. (*Jackson v. Hough,* 38 W. Va. 236; *Merchants' Bank v. Barnes,* 47 L. R. A. 737.)"

Again at page 175 the court says: "A public *quasi* corporation, such as a county, which receives taxes and applies them all to its own use when it should pay bonds issued by the town out of such taxes, is liable to such town therefor. (*Strough v. Jefferson County,* 119 N. Y. 212; 23 N. E. Rep. 552.)   Where a county receives money belonging to other persons without authority it must refund to such persons. (*Chapman v. County of Douglas,* 107 U. S. 348.)   Where taxes are paid to a county by a sheriff when they should have been paid to a city, the city may recover such taxes from the county. (*Salem v. Marion County,* 25 Ore. 449; 36 Pac. Rep. 163.)   *   *   *   Where a school trustee expends money for the actual benefit of township schools which by law he is required to pay over to another school corporation, such township is liable to

such corporation for the amount of money thus expended. (*Center School Township v. School Com'rs,* 150 Ind. 168; 49 N. E. Rep. 961.)''

In the case of *Warner v. City of New Orleans,* 167 U. S. 467, the court in passing on a question, not unlike the one at bar, says: ''One who purchases property and pays for it in warrants drawn upon a particular fund, the creation of which depends largely on his own action, is under an implied obligation to do whatever is reasonable and fair to make that fund good. He cannot certainly so act as to prevent the fund being made good, and then say to his vendor, You must look to the fund, and not to me.''

In the case of *City of Louisiana v. Wood,* 102 U. S., page 298, being a case where the municipal authorities of the City of Louisiana, Missouri, in order to avoid the effect of a statute recently passed, prohibiting the issuing of city bonds, dated the bonds of a date anterior of the passage of the statute. Mr. Justice Waite, in disposing of that case, uses the following language: ''In *Moses v. Macferlan,* 2 Burr. 1005, it is stated as a rule of the common law that an action 'lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition.' The present action can be sustained on either of these grounds. The money was paid for bonds apparently well executed, when in fact they were not, because of the false date they bore. This was clearly money paid by mistake. The consideration on which the payment was made has failed, because the bonds were not, in fact, valid obligations of the city. And the money was got through imposition, because the city, with intent to deceive, pretended that the false date the bonds bore was the true one. While, therefore, the bonds cannot be enforced, because defectively executed, the money paid for them may be recovered back. As we took occasion to say in *Marsh v. Fulton County,* 10 Wall. 676: 'The obligation to do justice rests upon all

persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' * * * The only contract actually entered into is the one the law implies from what was done, to wit: that the city would, on demand, return the money paid to it by mistake, and, as the money was gotten under a form of obligation which was apparently good, that interest should be paid at the legal rate from the time the obligation was denied. That contract the plaintiffs seeks to enforce in this action and no other.''

It will be observed from an examination of the above authorities that municipal corporations are, like individuals, held to account for money received by them, which in equity and in good conscience belongs to another, and that an action in assumpsit will lie in favor of the person to whom the money belongs against such municipal corporations to recover the same. In the case at bar it would certainly seem that the City of East St. Louis having, through its officers, obtained the funds which legally and equitably should have gone in payment of anticipation warrants held by appellant, would be liable therefor to the extent that the revenue, which should have gone in payment of said warrants, was so used by said city, and this we believe to be the holding of our Supreme Court in this character of case.

A great deal was said in the oral argument of this case and in the written briefs with reference to the dual nature of a city, and while the authorities hold that a city has such dual relations and that so far as those functions are concerned which are held to be governmental, the city is not liable for the action of its officers, still we do not believe that the duties of cities in the carrying out and the execution of its ordinary affairs as a city comes under that head. In

those matters it is liable for its acts and the acts of its officers, just the same as an individual.

For the reaons above set forth, we believe this cause should be reversed and remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*