O. B. Avery Company for the use of Allis-Chalmers Manufacturing Company, Appellant, v. Highway Commissioner of Road District No. 8-1, Williamson County, Appellee.

Opinion filed June 8, 1935. Rehearing denied September 5, 1935.

DENISON & SPILLER, of Marion, for appellant.

J. ROY BROWNING, of Chicago, and CHARLES C. MURRAH, of Herrin, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

On the 4th day of March, 1930, the O. B. Avery Company, a corporation, one of the appellants herein, sold a tractor to the highway commissioner of the town of Blairsville, Williamson county. After the allowance of credit for certain machinery traded in by the township, the purchase price was $3,500. The township did not have available cash to meet the payment and the proper township officers issued two tax anticipation warrants of $1,750 each, to draw interest

at six per cent. Both warrants were issued on March 8, 1930, one due on May 1, 1930, and the other on October 10th following. The tractor had been purchased by the Avery Company from the Allis-Chalmers Manufacturing Company and Avery Company gave its note for the purchase price and a conditional sales contract was executed. Soon after the issuance and delivery of the warrants to the Avery Company, it assigned the warrants to Allis-Chalmers for a valuable consideration. This suit is in the name of the Avery Company for the use of Allis-Chalmers Company but the latter company is the real party interested.

Subsequent to the issuance of the warrants and before this suit was started, Williamson county abandoned township organization and adopted county organization. Road District No. 8-1 was formed, identical in territorial area with the town of Blairsville.

O. B. Avery Company for the use of Allis-Chalmers Manufacturing Company instituted suit on the tax warrant due May 1, 1930, and made highway commissioner of Road District No. 8-1 in Williamson county defendant. The two companies will be referred to as plaintiffs and the highway commissioner of the road district as defendant.

This case was before this court at a previous term and a judgment in favor of the plaintiff was reversed and cause remanded. 266 Ill. App. 627 (Abst.). The reversal was based upon the insufficiency of plaintiff's declaration to state a cause of action. The declaration was amended and upon a trial before the court without a jury, a judgment was entered in favor of defendant.

The declaration upon which the instant case was tried contained a special count and the common counts. The special count alleged facts showing a compliance with the various statutory steps leading to the issuance of a tax warrant, the levy and collection of the taxes and the payment of the same to the treasurer of

the road and bridge fund. It also alleged the assignment of the tax warrants to the Allis-Chalmers Manufacturing Company. It contained the allegation that the treasurer of the road and bridge fund deposited the taxes collected in the Cambria State Bank and wrongfully allowed it to remain in the bank when the bank was in a failing condition, all of which was known to the treasurer of the fund, or by the exercise of ordinary care should have been known to him; that the said money was permitted to remain on deposit in said bank until the bank became insolvent and closed by order of the State auditor; that on April 9, 1930, the highway commissioner and treasurer undertook to pay the anticipation warrants and issued a check drawn on the Cambria Bank, payable to the Avery Company. The Cambria Bank closed on April 14th without payment of the said check and that by reason thereof, the township became liable to Allis-Chalmers Company for money had and received. The defendant's pleading consists of a general issue plea and a plea of payment. The greater part of the facts are stipulated.

Defendant contends that the tax warrant sued upon is not a promise to pay but is an order to pay the amount specified from taxes already levied, the payment to be made when the taxes were collected; that it was in effect an assignment of a certain amount from a specified fund to be paid when collected and that the only obligation of the road district was to see that the taxes were set apart for the payment of the warrants and properly applied. This principle has been recognized in numerous decisions of the courts of this State. *City of Springfield v. Edwards,* 84 Ill. 626; *Fuller v. Heath,* 89 Ill. 296; *Booth v. Opel,* 244 Ill. 317; *Randolph v. Town of Bernadotte,* 243 Ill. App. 581. Plaintiff recognizes the rule above stated as being the law but seeks to avoid it by application of the rule announced in *Conway v. City of Chicago,* 237 Ill. 128, and *Harrold v. City of East St. Louis,* 197 Ill. App.

121. In each of these cases, the tax money against which the tax warrant was issued had been expended by the municipality in its general corporate affairs. The court there held that an action in assumpsit would be the remedy.

The evidence shows that the highway commissioner made a levy for road and bridge purposes for the year 1929. This tax was to be collected in 1930 and when collected, constituted the fund out of which the two warrants were to be paid. It is stipulated that the aggregate of the two warrants, and all other warrants drawn against the same tax, did not exceed 75 per cent of the total levy. The amount of the other warrants, if any were issued, is not shown by the evidence. The treasurer of the road and bridge fund received $7,686.20 from said levy. The warrant that was due October 10, 1930, was paid on or about October 1, 1930, from said fund, the total amount due being $1,791.99. That sum deducted from the total received by the treasurer leaves a balance in the fund of $5,894.21. Nothing is shown as to what became of the balance of that fund. As far as this record shows, the whole of that balance was available for the payment of the warrant sued upon. On April 8, 1930, the treasurer had a part of said balance on deposit to his account as treasurer in the Cambria State Bank. On that date, he issued two checks against said fund, both payable to the Avery Company, one for $1,734, the amount then due on the warrant sued upon, the other for $83.30 to pay an account Avery Company had against defendant. It is stipulated that on the date of the issuance of these checks, there was sufficient money in the treasurer's account in the Cambria Bank to pay both checks in full. It does not appear what balance would be left in the road and bridge fund after deducting the amount of the two checks. Deducting the amount of the two checks issued on April 8th and the amount paid on

the warrant due in October from the total tax received by the treasurer, it appears that a balance of $4,076.91 remained. The record is silent as to what was done with that balance. The amount on deposit to the treasurer's account in the Cambria Bank became involved in a bank failure as hereinafter referred to but the balance of $4,076.91 does not appear to have been on deposit in the bank at the time of its failure. If that balance still remains in the hands of the treasurer of the road district or if the same has been expended by the road authorities for other road purposes, then, in either event, the road district would be liable in this action for money had and received. *Conway v. City of Chicago, supra; Harrold v. City of East St. Louis, supra.*

In the absence of evidence to the contrary, we must assume that the road district officials did their duty and that the balance of the tax fund was set apart and retained for the purpose of paying the warrant in question if its defense of payment is not sustained.

The defense of payment presents two questions: First, Do the admitted facts as a matter of law constitute payment to Avery Company? And second, Did the defendant have notice of the assignment of the warrant by Avery Company to Allis-Chalmers Company so that payment to Avery Company would not be binding on Allis-Chalmers Company?

The evidence shows that soon after the issuance and delivery of the anticipation warrants to Avery Company, it assigned and delivered the same to the Allis-Chalmers Company for a valuable consideration. On April 5, 1930, the road commissioner wired Avery Company at its office in St. Louis that the road district wished to pay on the warrants and to send a representative. Thereafter on April 8, H. L. Lippert, an agent of Avery Company, called on the road district officials. The treasurer of the road and bridge fund

drew a check payable to Avery Company for $1,734, which was the amount unpaid on the anticipation warrant due May 1 and delivered that check to Lippert together with another check for $83.30 to cover an item which is not material here. The same day Lippert mailed the checks to Avery Company and they were received by it in St. Louis on April 10. The Avery Company indorsed the two checks and delivered them to the Mercantile-Commerce Bank and Trust Company in St. Louis and the account of the Avery Company was credited with the amount of the two checks. On or about the 11th day of April, the Mercantile Bank sent the checks by mail direct to the Cambria Bank. Accompanying the checks were instructions from the Mercantile Bank to the Cambria Bank, the material part of which is as follows: "Please remit us in payment in St. Louis, Chicago, or New York exchange (St. Louis preferred) or in accordance with special instructions in this letter.

"We enclose for collection and remittance cash items as listed.

"If not paid upon presentation advise us at once by mail stating the reason for refusal.

"Items listed are cash (not collections), and must be handled strictly in accordance with instructions.

"If not paid on presentation, wire reason. Do not remit or advise credit for this item unless actually paid."

The checks with the instructions were received by the Cambria Bank April 12th. The Cambria Bank stamped the checks "paid," charged them to the account of the treasurer of the road and bridge fund and afterwards returned the checks to the treasurer. On the same day, the Cambria Bank issued and mailed to the Mercantile Bank its draft for the amount of the two checks. The draft was drawn on the First National Bank of St. Louis. Upon receipt of the draft, the Mercantile Bank

indorsed and presented the draft to the First National Bank for payment. There was not sufficient cash credit in the account of the Cambria Bank with the First National Bank to pay the draft but credit papers had been received which had not cleared at the time of the presentation of the draft. The First National Bank marked the draft "Uncollectible Funds." On the 15th day of April, the draft was again presented but was not paid because the Cambria Bank had been closed on April 14th.

As a general proposition of law, it may be stated that where a bank receives a check drawn on a checking account of the drawer in that bank, stamps it paid, charges it to the account of the drawer and credits the payee with the amount that the same is regarded as a payment. *American Exchange Nat. Bank v. Gregg,* 138 Ill. 596. Plaintiffs recognize this rule but contend that they have proved the existence of a custom which takes this case out of the general rule. Plaintiffs introduced evidence to prove that in St. Louis and in the southern part of this State, the usual banking practice required a bank receiving a check drawn on a distant bank to send that check direct to the bank it was drawn on for payment and such drawee bank would then issue its draft on its correspondent bank and deliver the same in payment of the check. It is plaintiff's contention that the treasurer of the road and bridge fund issued and delivered the check to Lippert for the Avery Company charged with the knowledge of such a custom and that under such a custom, the check would not be considered paid until the draft was presented to the bank upon which it was drawn, and cites cases of other jurisdictions in support thereof.

The instructions directed the Cambria Bank to handle the checks as cash and not as items for collection. If they were not paid on presentation, the Cambria Bank was to wire the Mercantile Bank the reason

for nonpayment. The instructions further directed that the Cambria Bank should not remit unless the checks were actually paid. The directions were that if payment was made to the Cambria Bank, it should remit to the Mercantile Bank by St. Louis, Chicago or New York exchange (St. Louis preferred). The directions by the Mercantile Bank to the Cambria Bank that there should be no remittance unless the checks were "actually paid" could mean but one thing, that is that the Cambria Bank should take no action in remitting until the debt evidenced by the check was paid, which would mean that the liability of the treasurer as maker had been discharged and the relationship of debtor and creditor between the maker of the check and the holder had been terminated. What the Cambria Bank did was in accordance, for it stamped the checks paid, charged it to the account of the maker and returned the checks to him. The draft that was issued by the Cambria Bank was, upon nonpayment, returned to Avery Company and it has since retained it. Even if such a custom was established, it would not prevent the parties from presenting and paying the check in a way contrary to the custom, *Deshler v. Beers*, 32 Ill. 368, and in view of the explicit instructions sent by the Mercantile Bank with the checks to the Cambria Bank, we are of the opinion that the rights of the parties in this transaction are controlled by the instructions and not by the custom. By the steps that were taken, the money which the treasurer of the road district had on deposit in the Cambria Bank was withdrawn from his account and control and passed into the hands of the Cambria Bank to be remitted by it to the Mercantile Bank pursuant to the instructions. The act of the Cambria Bank in making the remittance was under the directions of the Mercantile Bank and the failure of the Cambria Bank to remit by draft that would be paid on presentment was not the act of the treasurer of the

road district and the road district is not liable therefore.

The remaining question is, Did the road district have notice of the assignment of the tax warrant to Allis-Chalmers? The only evidence tending to prove notice is in the testimony of Lippert. He testified that he told the road commissioner that the warrants had been assigned. The road commissioner did not testify but the treasurer of the road and bridge fund stated that he did not have notice and he is the officer charged with issuing the check and the one in control of the fund. It does not appear that the commissioner communicated any knowledge he had of the assignment to the treasurer. It is not claimed that Allis-Chalmers Company gave notice of its rights to any official of the road district. When the warrant that was due in October was paid, which was subsequent to the transaction in question, the check of the district was made payable to Avery Company and no question was raised. The question of notice was a question of fact and the evidence is in conflict. We do not feel that we would be warranted in disturbing the finding of the trial court.

Finding no reversible error, the judgment is affirmed.

*Judgment affirmed.*