Board of Trustees of Police Pension Fund of Glen Ellyn et al., v. Village of Glen Ellyn, Appellant.

Gen. No. 10,295.

Opinion filed March 8, 1949. Rehearing denied May 3, 1949. Released for publication May 4, 1949.

WALTER M. FOWLER, of Chicago, for appellant.

WERNER W. SCHROEDER and THEODORE W. SCHROEDER, both of Chicago, for appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The defendant, Village of Glen Ellyn, is prosecuting this appeal from a decree entered by the circuit court

of DuPage county, allowing plaintiffs, Board of Trustees of the Police Pension Fund of Glen Ellyn, et al., to recover judgments for funds which defendant allegedly diverted from the pension fund from 1932 to 1945, with interest thereon, totaling $18,289.51, and for the sum of $12,469.03 which allegedly would have been paid into the fund if defendant had levied and collected certain taxes. .

The essential queries presented herein are: whether the Village of Glen Ellyn had a population of 5,000 or more in 1930, under the terms of the Police Pension Fund Act (ch. 24, par. 892, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 100.257 *et seq.*]) ; whether the money defendant allegedly diverted from the fund for its own use can be recovered by plaintiffs; and whether under any legal theory liability can be imposed for the amount which defendant might have collected for the fund had it levied a tax in accordance with the Police Pension Fund Act.

The Police Pension Fund Act, operative since 1909, with certain amendments not material to this inquiry, provides for the formation and disbursement of a fund in villages having a population of not less than 5,000, nor more than 200,000 (ch. 24, pars. 892–904b, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 100.257 *et seq.*]).

The relevant sections thereof provided, in 1930:

"That in all cities, villages and incorporated towns having a population of not less than 5,000 and not more than 200,000 inhabitants, said population to be determined by the United States government statistics, there shall be set apart the following moneys to constitute a police pension fund: First. Three-fourths of all money received for licenses upon dogs. . . . Third. Ten (10%) per cent of all fines collected for violation of city ordinances . . . Eighth. Ten (10%) per cent of all revenue collected from licenses by such city, village or incorporated town not heretofore mentioned in this Act. . . . Tenth. The

city council or board of trustees of any such . . . village . . . shall levy a tax annually of three-twentieths of a mill on the dollar on all taxable property of such . . . village . . . . such tax shall be levied and collected in like manner with the general taxes of such . . . village . . . and shall be in addition to all other taxes which such . . . village . . . is now or hereafter may be authorized to levy upon the aggregate valuation of all property within such . . . village . . . , and shall not in any event be included with any limitation of rate for general corporate purposes, as now or hereafter provided by law, but shall be excluded therefrom and be in addition thereto. . . .''

With reference to ascertaining population, the Cities and Villages Act, of which the foregoing pension fund provisions are a part, provides:

''Whenever in this Act any provision thereof is based upon the number of inhabitants, the number of inhabitants of the municipality shall be determined by reference to the latest census taken by authority of the United States, or this state, or of that municipality. It is the duty of the Secretary of State upon the publication of any State or United States census to certify to each municipality the number of inhabitants as shown by that census. And the several courts in this state shall take judicial notice of the population of any municipality as the population appears from the latest Federal, State or municipal census so taken.'' (Ch. 24, par. 1–9, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 21.1119].)

Plaintiffs submitted in evidence the First Series Population Bulletin for Illinois of the Fifteenth Census of the United States, issued by the Bureau of the Census, entitled, ''Number and Distribution of Inhabitants,'' in which the population of the Village of Glen Ellyn is designated as 7,680. To this document plaintiffs attached the certificate of the Director of the

Census stating that this bulletin, issued on December 24, 1930, in connection with the Fifteenth Census is an official publication of the Bureau of the Census, and shows the population of the Village of Glen Ellyn as 7,680 on April 1, 1930, and also the certificate of the Chief Clerk of the Department of Commerce certifying that the party signing as Director of the Census held that office. Both certificates bear the seal of the Department of Commerce.

Defendant urged that this publication was of no legal significance on the ground that the Secretary of State of Illinois had issued no certificate of population in 1930 to the Village of Glen Ellyn as provided in the aforementioned statute. Defendant offered the testimony of the clerk of the Index Department of the Illinois Secretary of State's office, who stated that he was unable to find a certificate of the village in the office record. However, this clerk was not employed in the Index Department prior to 1935.

In addition to the aforementioned publication of the Bureau of the Census, plaintiffs offered evidence designed to show actual knowledge on the part of the village president and board members that the population was in excess of 5,000 in 1930 and thereafter. The former Superintendent of Police testified that he requested the village president in 1931 to establish a police pension fund since the population exceeded 5,000 under the 1930 census. This conversation was corroborated by the former village president. The superintendent, moreover, also made requests of other members of the village board in 1931.

Plaintiffs submitted the testimony of other members of the village board who served during 1933 to 1939, and who stated that they knew that the population exceeded 5,000, and that there were conversations between the members of the board regarding the establishment of a police pension fund. The village attorney also testified that he had discussed the matter of pop-

ulation with the board, and advised the members to set up a fund, otherwise they might be confronted with a law suit. Moreover, the present Superintendent of Police, who has served since 1937, stated that he had conversations with the village president in 1937 regarding the establishment of a fund; and the county clerk testified that he had prepared and mailed to the officials of the cities and villages in the county a book showing, among other things, the population of the Village of Glen Ellyn in 1930.

With reference to defendant's population in 1940, the Federal Census shows it as 8,055. There is a conflict in defendant's contentions and evidence pertaining to the receipt of the Secretary of State's 1940 certificate of population. In its answer defendant denies the receipt at any time of any such certificate of population. Moreover, the village clerk testifying on defendant's behalf, stated that he did not think the village received an official report of the population, and did not recall signing a receipt therefor. Nevertheless, in its statement of facts in the brief herein, defendant claims that it adopted the ordinance establishing the police pension fund pursuant to the 1940 certificate of the Secretary of State.

It is uncontroverted, however, that no funds were set apart, nor taxes levied, nor Board of Trustees of a Police Pension Fund established pursuant to the statutory mandate, until April 8, 1946. The Board, as organized, consisted of two members appointed by the village president, two elected by the Police Department, and the first pensioner.

On October 6, 1946, the plaintiff Board demanded that the village repay the fund the percentage of the fines and license fees designated in the statute, which the village collected during the years 1931 to 1945, together with interest thereon, as well as the sum which would have been paid into the fund if defendant

had levied and collected a tax of three-twentioths of a mill on the assessed value of all property.

The village denied the claim, and plaintiffs commenced this proceeding on the theory that the Village of Glen Ellyn held the money received from fines and licenses which should have been set apart in the fund as trustees for the benefit of the said pension fund; that the village is liable for interest for wrongfully withholding money; and that liability should be imposed on either a negligence or implied contract basis for the money which would have been received had the tax been levied.

In its answer defendant denied all liability and asserted that, inasmuch as the Secretary of State did not certify the population of the Village of Glen Ellyn in 1930, it was without power or authority to ascertain the population and establish the fund; that the village is not liable for the negligence of its officials since the functions set up in the Police Pension Fund Act are governmental; that no appropriations were made and no tax levied because the maximum amount of taxes were levied; that no deductions were made from policemen's salaries; that no pension board of three members, as provided prior to 1943, ever existed; that no damages were suffered by plaintiffs; that the alleged cause of action was barred by the statute of limitations; and that the Police Pension Fund Act was unconstitutional.

After trial on the merits, the circuit court awarded plaintiffs a judgment for the money allegedly diverted from the pension fund during the years 1932 to 1945, with interest thereon, but denied recovery for the sum allegedly diverted during 1931. The court also entered a judgment for the amount which plaintiffs claimed would have been paid into the pension fund during 1932 to 1945 had a tax been levied, but denied recovery for the conjectured sum for 1931. Plaintiffs

have filed a cross appeal from the denial of its claims for 1931, and defendant has appealed from the judgments imposing liability upon it.

In ascertaining the propriety of the decision of the circuit court, it is incumbent upon this court to determine initially whether the evidence established that the Village of Glen Ellyn had a population of 5,000 within the meaning of the police pension statute.

This statute provides that ". . . said population to be determined by the United States government statistics." In *People ex rel. Nicholson v. Board of Trustees of Police Pension Fund of Village of Hinsdale*, 281 Ill. App. 394, where the court construed this phrase, it was held that reference must be made to the general provisions pertaining to population in the Cities and Villages Act, and that when the statutes are construed in *pari materia* the phrase means that population must be determined by reference to the latest census taken by the authority of the United States.

In the *Hinsdale* case, *supra*, the Federal Decennial Census of 1920 indicated that the population of the village was 4,042, and the census of 1930 showed it to be 6,923. Plaintiff's claim therein was predicated upon the status of the population in 1926, and evidence was offered of an estimate made by an employee of the federal census bureau, on the basis of the average rate of increase within the 10 year period, whereby it was suggested that by 1926 the population would have exceeded 5,000.

The court in construing the terms of the Police Pension Fund Act, stated that the words "the population to be determined by the United States government statistics" standing alone are vague and uncertain. However, the State adopted a method of determining the population of cities and villages which is prescribed in the General Incorporation Act (ch. 24, par. 1-9) whereby the population is to be determined according to the latest census taken by the authority of

the United States. The court held, therefore, that since there was no Federal Census showing the population in 1926, and inasmuch as the population was less than 5,000 in the 1920 census, a mere estimate by a census official did not amount to an official federal census, and was therefore insufficient under the statute.

Defendant contends that this decision establishes that par. 1–9 of the Cities and Villages Act qualifies the police pension fund provisions to the extent that the certificate of the Secretary of State referred to in par. 1–9 is a condition precedent to the recognition of a federal census, and to any action by the village authorities.

Neither the terms of the statute nor the statements of the court warrant that gratuitous conclusion. Even if the phrase in the Police Pension Fund Act ''to be determined by United States government statistics'' were to be construed in *pari materia* with par. 1–9 of the Cities and Villages Act that statute merely provides that the number of inhabitants shall be determined by reference to the latest census taken by authority of the United States, or this State, or that municipality. It further imposes a duty upon the Secretary of State, upon the publication of such a census, to certify to each municipality the number of inhabitants as shown by the census. It does not, however, make that certificate a condition precedent to the authenticity or official recognition of the census. In fact, a contrary legislative intent is manifest from the ensuing clause which requires courts to take judicial notice of a census taken under the authority of the United States, State, or municipal governments, without reference to any certificates by the Secretary of State.

It is apparent that a careful reading of par. 1–9 indicates that in imposing the standard of determining population, the legislature intended that the figures be that of an official census by a government unit, as

distinguished from other tabulations or other evidence.

Neither this statutory provision nor the Police Pension Fund Act make the certificate of the Secretary of State a condition precedent to the recognition of an official Federal Decennial Census, nor does it appear that the court in the *Hinsdale* case even remotely regarded the certificate of the Secretary of State as a material factor in the determination of population for the purposes of the Police Pension Fund Act. It is the census itself which is determinative. Therefore, since plaintiffs submitted the official publication of the 1930 Federal Decennial Census which indicated the defendant's population to be 7,680, the village officials were under an obligation under the pension fund statute to establish a fund and provide for a board of trustees at the earliest possible date.

The next query is whether liability can be imposed upon the defendant for its failure to establish such a fund and make a proper application of its monies as provided in the statute.

■■ It is clearly established that the Police Pension Fund Act is mandatory upon municipalities (*People v. Abbott*, 274 Ill. 380; *Donahue v. Board of Trustees*, 263 Ill. App. 568) and that the officials were obliged to dispose of the village's finances in accordance with law. (*People v. Hummel*, 215 Ill. 71.) The aforementioned statute provides that there shall be set apart into the fund three-fourths of all money received for dog licenses, ten (10%) per cent of all fines collected for violation of city ordinances, and ten (10%) per cent of all revenue collected from licenses not heretofore mentioned. Defendant failed to make such an allocation, and used the entire proceeds for its own benefit.

■ It is an elemental principle of law, applied in both law and equity courts, that where one person has received money or its equivalent, which belongs

to another, under such circumstances that in equity and good conscience he ought not to retain it, recovery will be allowed. (*Board of Highway Commissioners v. Bloomington*, 253 Ill. 164; *Rothschild v. Village of Calumet Park*, 350 Ill. 330; *Harrold v. City of East St. Louis*, 197 Ill. App. 121; *Indiana Harbor Belt R. Co. v. Calumet City*, 391 Ill. 280.)

In equity, the theory of recovery is predicated on the imposition of a constructive trust, (*Rothschild v. Village of Calumet Park, supra; Kochorimbus v. Maggos*, 323 Ill. 510) and at law, on the basis of a quasi-contract, or contract implied in law. (*Board of Highway Commissioners v. Bloomington, supra; People v. County of Alexander*, 310 Ill. App. 602.)

In *Harrold v. City of East St. Louis, supra,* proceedings at law were brought to recover from the city certain money which should have been applied on tax anticipation warrants, and was used instead to pay back salaries to city employees. In allowing recovery against the city, the court, after a resume of the law, concluded:

"It will be observed from an examination of the above authorities that municipal corporations are like individuals, held to account for money received by them, which in equity and good conscience belongs to another, and that an action in assumpsit will lie in favor of the person to whom the money belongs against such municipal corporations to recover the same. In the case at bar it would certainly seem that the City of East St. Louis having, through its officers, obtained the funds which legally and equitably should have gone in payment of anticipation warrants held by appellant, would be liable therefor to the extent that the revenue, which should have gone in payment of said warrants, was so used by said city, and this we believe to be the holding of our Supreme Court in this character of case."

In the *Bloomington* case, *supra,* the highway commissioners brought an action at law against the city to recover from it the amount of taxes turned over to the city by the collector pursuant to a statute which was subsequently held unconstitutional, with the consequence that the commissioners became entitled to the money. The court held, in substance, that although at the time the city received the money it had a right thereto under the statutory provision; however, when that provision was declared unconstitutional, the situation reverted as though no such law had ever been passed, and the money belonged to the highway commissioners, and could be recovered in an action of assumpsit for money had and received to the use of the city, irrespective of any lack of privity other than that imposed by law. The court further elaborated on the legal concept on which recovery was predicated with illustrations and citations.

In *Rothschild v. Village of Calumet Park,* 350 Ill. 330, the court allowed recovery against the village for the improper allocation of special assessment funds to bondholders. The village failed to pay the plaintiff bondholder his pro rata share of the money collected and applicable to the payment of the bonds under the statute.

In imposing a trust upon the village for the benefit of the bondholders, whereby the proceeds of the special assessment were deemed trust funds for the payment of the bonds, the court stated that equity would take jurisdiction even though the claim could be the basis of an action of assumpsit, and that when it was shown that the village collected the money applicable to the payment of plaintiff's bonds, and had not paid them, plaintiff had met the burden imposed upon him and was entitled to judgment.

On the basis of the foregoing authorities it is our opinion that when the defendant received the

various sums from fines and licenses, from 1932 to 1945, it was obligated under the mandatory statute to set apart a designated percentage thereof for the Police Pension Fund, and for its wrongful diversion to its own use of money belonging to the pension fund, defendant is liable to plaintiffs for money had and received.

Defendant's arguments denying plaintiffs' right thereto are not germane to the issue, and are without legal substance. That the establishment of the pension fund may be a governmental function does not affect defendant's liability for money wrongfully retained for its own benefit, for recovery thereof is not predicated on a tort theory. Nor is this a case involving the vesting and survivability of an individual pensioner's right to the fund (*Creighton v. County of Pope*, 386 Ill. 468), or the determination of whether an express trust was created by the statute (*McKee v. Paradise*, 299 U. S. 119).

The amendment of the statute changing the number of trustees of the fund from three to five does not in any way affect the substantive rights of the parties, nor modify defendant's obligation to set apart a percentage of the designated fines and licenses to the pension fund, or minimize defendant's wrongful acts in diverting such funds to its own use.

That amendment changing the number of board members clearly does not constitute "prior legislation" within the terms of the ninth clause of the Pension Fund Act, wherein it is provided that all monies accumulated under prior legislation shall be put into the fund. Even if it were so regarded, that clause does not by its terms or implication preclude recovery of money diverted from the fund.

Defendant's contentions that plaintiffs have no right to institute this proceeding, inasmuch as the board was not in existence at the time the funds were

allegedly diverted, and is not specifically authorized under the Pension Fund Act to bring suit, are untenable. The plaintiff board was not in existence at the commencement of defendant's diversion of the funds solely due to defendant's failure to comply with the law, and it would be a perversion of legal techniques to permit defendant to utilize its wrongful act as a defense to justify other violations of the statute. When the defendant finally organized the plaintiff board in 1946, there was created for the first time a legal entity with the capacity to sue for the wrongful diversion of the funds by defendant since 1931. As a quasi municipal corporation, the board had sufficient legal statute to institute proceedings. (*People ex rel. Loftus v. Keller,* 332 Ill. App. 389; 1 McQuillin Municipal Corporations, sec. 135; *Board of Trustees of Police Pension Fund of Com'rs of Lincoln Park v. Commissioners of Lincoln Park,* 282 Ill. 348) and as trustee it was under a duty to recover money diverted from the fund (54 Am. Jur. 435).

Nor can the statute of limitations be invoked to defeat plaintiffs' right to assert the cause of action, since defendant's wrongful act prevented the creation of a proper legal entity to protect and supervise the pension fund until 1946. This court will not sanction the nullification of equitable doctrines by close conceptual reasoning, and it is our opinion that the plaintiff board is a proper party to bring this suit. Therefore, the circuit court committed no error in entering judgment for the percentage of the revenues designated by the statute which defendant failed to allocate to the fund and diverted to its own use from 1931 to 1945.

Defendant objects further to the circuit court's allowance of interest on this claim on the ground that a municipal corporation is not liable for interest except under an express contract to pay it. (*Morgan v. City of Rockford,* 375 Ill. 326.) Interest

will be imposed, however, even in the absence of a contract, where money is unlawfully obtained, or where it is lawfully obtained and unlawfully withheld. (*Conway v. Chicago*, 237 Ill. 128; *Rothschild v. Village of Calumet Park, supra.*)

In the *Rothschild* case, the court held that the liability of the village for interest was not based upon its undertaking to pay such interest, but by virtue of its liability as trustee to pay the bondholders the money it received for that purpose. Interest is allowed in such actions under the Interest Act on money had and received to the use of another without the owner's knowledge.

With reference to plaintiffs' claim for the money which would have been paid into the pension fund if defendant had levied and collected the tax pursuant to the statute, plaintiffs have advanced the alternative theories of negligence and implied contract upon which to predicate recovery.

As hereinbefore stated, when the village attained a population of 5,000 or more, its officials were obliged to levy a specified tax to be paid into the pension fund. According to the terms of the statute this tax was not affected by the tax limitations imposed upon the municipality, and was in addition to all other general taxes authorized to be levied by the village. However, defendant's failure to levy such a tax for the benefit of the pension fund cannot be the basis of liability on a negligence theory. It has been determined that the duties imposed upon a municipality with reference to the establishment of police pension funds are governmental in character *(Board of Trustees v. Commissioners of Lincoln Park, supra),* and under established refinements of law, municipalities are not liable for the negligence of their officers and agents in the performance of governmental functions. (38 Am. Juris. 261; 6 McQuillin, Municipal Corporations, sec. 2793; *LePitre v. Chicago Park Dis-*

*trict,* 374 Ill. 184; *Lage v. City of Marshalltown,* 212 Ia. 53, 235 N. W. 761).

■ ■ We are unable to agree with plaintiffs' alternative theory to recover the estimated taxes on the ground that a contract was implied by the statutory mandate to levy a tax. The terms of the statute do not warrant such a construction, nor do they create any vested rights in the uncollected taxes. *(Lage v. City of Marshalltown, supra.)* Unlike plaintiffs' claim for the sums diverted by defendant, there was no unjust enrichment with reference to the uncollected tax, which a court would require to be paid to the persons entitled thereto. The failure to levy the tax was simply an act of negligence in the performance of a governmental function for which the law does not impose liability.

The order of the circuit court entering judgment for the estimated amount which might have been collected had the tax been levied, is therefore in error and should properly be reversed.

■ Under the foregoing analysis, the decree of the circuit court is affirmed with reference to the judgment for the money diverted from the fund, with interest thereon, and is reversed as to the judgment for the estimated tax collections. Moreover, plaintiffs' cross appeal must be denied on the ground that the order of the circuit court disallowing recovery for funds diverted during 1931 was proper, inasmuch as a reasonable time might be allowed between defendant's attainment of the designated population under the police pension fund statute, and the establishment of the fund.

*Judgment affirmed in part and reversed and remanded as to the remainder, with directions to enter a decree in accordance with the views expressed herein.*